## ORMSBY v. DE BORRA et al.

### L. A. No. 249; March 4, 1898.

#### 52 Pac. 499.

Pledge.—An Order to the Pledge-holder of Notes already indorsed, to hold them for the payment of another debt, constitutes a pledge without further delivery.

Appeal.—Where the Evidence is Conflicting, the Findings of the trial court will not be disturbed.

Pledge.—In an Action to Foreclose a Pledge of Notes placed with a bank as pledge-holder, the pledgee is entitled to their possession, and to have them remain in the custody of the bank.

Pledge.—One Having No Interest in the Property pledged is not aggrieved by, and cannot complain of, the sufficiency of the judgment against the pledge-holder, in an action to foreclose the pledge.

Pledge.—Both an Order Directing a Pledgee to Hold notes to secure payment of plaintiff's debt and the notes referred to are proper evidence in an action to foreclose the pledge.

APPEAL from Superior Court, Riverside County.

Action by St. Clair Ormsby against Alex De Borra and another, Mary F. De Borra intervening. From a judgment for plaintiff and an order denying a new trial the intervener appeals. Affirmed.

J. T. Crowe and Gill & Powell for appellant; Coldwell & Ducal and Purrington & Adair for respondent.

BELCHER, C.—The plaintiff brought this action to recover the amount due on a promissory note for $1,035, executed by defendant Alex De Borra to plaintiff, and to have foreclosed said defendant's interest and equity of redemption in and to two certain described promissory notes alleged to have been pledged by him to plaintiff as security for the payment of his said note, and to be held by the defendant Orange Growers' Bank as pledge-holder. The prayer was for judgment against defendant De Borra for the sum of $834.82, and that the said notes so held in pledge be delivered by the Orange Growers' Bank to the sheriff of the county, and sold by him according to law, and that the proceeds of the sale be applied in payment of the amount due the plaintiff. Defendant De Borra answered, but set up no defense to the note sued upon. He denied having pledged the two notes as alleged in the complaint; denied that the Orange Growers' Bank was a pledge-holder of the notes, and alleged that Mary F. De Borra was the true and lawful owner of the said notes, and that, as her agent, he had placed them in the bank for her. The Orange Growers' Bank answered, stating that it had "no interest whatever in the matter in controversy, and is willing to surrender said notes to whomsoever shall be entitled thereto, and for that purpose deposits with this court said notes, to be by said court delivered to the party that this

court shall decide to be entitled thereto.'' Mary F. De Borra, wife of defendant Alex De Borra, by permission of the court, filed a complaint in intervention, in which she alleged that on the third day of January, 1893, she was the owner of certain real property in the city of Riverside, known as the ''Riverside Steam Laundry,'' and that her husband, acting as her agent, on that day sold said property to certain parties, taking in part payment therefor the two notes which are alleged in the complaint to have been pledged to the plaintiff; that said notes were taken by her husband in his own name, without her knowledge or consent; that her husband placed the said notes in the Riverside National Bank to secure payment to the bank of a certain indebtedness evidenced by his promissory note, which she also signed, and that such indebtedness had been fully paid; that the Orange Growers' Bank became the successor in business of the Riverside National Bank, and as such successor became the custodian of said notes; that she was the true and lawful owner of said notes, and was entitled to the possession thereof, and that she had demanded them from the Orange Growers' Bank, which refused to deliver them to her, and unlawfully detained the same; wherefore she asked judgment for the possession of the notes, and for her costs against the said bank, and for general relief. The plaintiff answered the complaint in intervention, denying all its principal averments, but admitting that the Orange Growers' Bank became the custodian of said notes, and alleging that it became such custodian as pledgeholder for the plaintiff as set forth in his complaint. The case was tried, and the court found, among other things, that all the allegations of the complaint were true, and all the denials thereof and all the counter-allegations in the intervener's complaint were untrue. Judgment was accordingly entered that the plaintiff recover from the defendant Alex De Borra the sum of $856.67, and from said defendant and the intervener his costs, amounting to $22.10, and that both of said sums were a valid lien upon the two promissory notes set out in the complaint, and were secured by a pledge thereof. From this judgment and an order denying her motion for a new trial the intervener appeals.

It is claimed for appellant that the findings were not justified by the evidence, and that the court committed several errors in law which call for a reversal. The facts proved

were, in substance, as follows: The plaintiff held three promissory notes made by defendant De Borra, for the payment of which he had no security. He wished to obtain security, and on April 4, 1894, he, with his attorney, A. A. Caldwell, went to see Mrs. De Borra, and asked her to sign the notes as surety. She declined to do so, and said that "the doctor had security, for he had the laundry property and other securities"; that "the doctor ought to pay his debts." "He ought to be able to secure you." "There is the laundry property. He must have security." On the next day plaintiff and his attorney went to see the defendant, and demanded security from him. They told him that Mrs. De Borra said he had security on the steam laundry. He said: "Give me the old notes, and I will give you a new note and security on the steam laundry"; "that he had no notes in his hands which he could turn over to him [plaintiff], but that he would secure him on the notes which were already pledged by him, that were made in his favor from certain parties who ran the steam laundry." Thereupon plaintiff gave up the old notes, and defendant signed and delivered to him, in lieu thereof, the notes sued upon, and at the same time signed and delivered to him a paper reading as follows:

"The Riverside National Bank:

"Please hold the collaterals now in your possession, viz., mortgage and notes on Riverside Steam Laundry, to the payment of Mr. St. Clair Ormsby, and apply same to his notes after your claim is satisfied.

"April 5, 1894.

"ALEX DE BORRA."

The plaintiff and his attorney then took the said note and paper, marked as "Plaintiff's Exhibits A and B," to the Riverside National Bank, and delivered the same to its cashier. The bank then held as security for an indebtedness of the defendant to it notes made to him by the parties who owned the steam laundry, including the two notes in controversy here. The cashier produced the said notes, and exhibited them to the plaintiff, and was told to hold them as security for him. The indebtedness of the defendant to the bank was paid off a few months later, and money was afterward collected by the bank on the notes and indorsed as payments on the plaintiff's note. During all this time defendant had a running account at the bank. Subsequently, but at what

particular time does not appear, the Riverside National Bank went out of business, and sold its goodwill and business to the Orange Growers' Bank, which became, and thereafter continued to be, the custodian of the notes in controversy.

Mrs. De Borra testified: "On January 3, 1893, he [her husband] bought the steam laundry property, with my money, for me. I didn't say anything as to who should take the title to that property. I supposed he took the property in my name, and did not know otherwise till this suit for these notes was brought. My husband had no money. I received mine from my brother's estate. The first payment that I received from that estate was $12,000, received in the fall of 1892. He sold the laundry, with my knowledge and consent, to the present laundry company. I was present when the sale was talked of. My husband did the business for me, but I knew the parties, and talked with Mr. Conrad and Mr. Crawford. I didn't see the notes taken for the property. I supposed they were made payable to me. . . . . The notes were placed in the National Bank as collateral security for a note we owed the bank." And on cross-examination she said: "I don't know that the doctor ever had a deposit of his own in any of these banks. I supposed the doctor checked against this money for the laundry. My bank account was less. I supposed it went there. I never knew he had any money after that date, so I could not say that he paid it with his own. . . . . The deeds for the property were not taken in my name. I couldn't tell you whose money bought that land. I don't know that the doctor had any money at that time. I supposed it was my money that paid for it. The doctor does not hold that land as my agent."

During the progress of the trial it was stipulated by counsel for the respective parties to the action "that the property known as the 'Riverside Steam Laundry Property' was originally owned by one J. Wesley Brooks, and that it was transferred by him to the parties composing the Riverside Steam Laundry Company on or about January 3, 1893, and that Dr. De Borra furnished the money for such transfer; that on the third day of January, 1893, or thereabout, the parties composing the Riverside Steam Laundry Company deeded this property to Dr. De Borra, and took from Dr. De Borra a contract for a deed, in which contract the parties composing the Riverside Steam Laundry Company agreed to pay $3,500,

and that, as evidence of such indebtedness, they signed and delivered notes to Dr. De Borra for that amount of money, in which notes were included the two notes, one for $100 and one for $1,000, described in the pleadings in this action; it being understood that the question as to who owned the money furnished by Dr. De Borra is to be determined by the evidence in this case."

1. Following the averments of the complaint, the court found, after reciting the making of the note by defendant to plaintiff on April 5, 1894, "that at the same time the said defendant Alex De Borra indorsed and delivered to the Riverside National Bank, a corporation, then doing a general banking business in the city of Riverside, California, the two promissory notes set out in paragraph three of plaintiff's complaint, as security for the payment of said promissory note set out in paragraph 2." This finding is assailed by appellant as not justified by the evidence; and it is said all the evidence shows "that on the said April 5th, said De Borra did not have said notes in his possession at all; that long previous to that date the said De Borra had indorsed and delivered the said notes to said bank as security for a debt owed by defendant to said bank, and that said De Borra never at any time had possession of said notes, or reindorsed them, or delivered them to the Riverside National Bank as security for plaintiff's note." It is true that the finding is not precisely accurate in its statement of the facts, but it is substantially so. The notes having been already indorsed by defendant, it was not necessary that they be reindorsed; and, having been already delivered to the bank as a pledge, it was not necessary that they be actually delivered to the plaintiff. The indorsements on the notes, and the order to the bank to hold them for the payment of plaintiff's note, constituted, in effect, an indorsement and delivery to him as a pledge. The law applicable to such transactions is stated in Jones on Pledges, section 83, as follows: "A delivery is sufficient which vests the title and control of the paper in the pledgee. Whenever, from the circumstances of the case, an actual delivery is impossible, the pledge may rest upon the contract of the parties, accompanied by the possession of a third person. Thus a note already pledged and in the possession of the pledgee may be again pledged by the owner to another person, subject to the lien of the first pledge, without any

further delivery of it. The possession of the note by the first pledgee may be regarded as the possession of the second pledgee through the agency of the former." Our conclusion, therefore, is that the judgment cannot be disturbed upon any of the grounds specified as objections to the first finding complained of.

2. The court further found that Mrs. De Borra was not, on the third day of January, 1893, or at any time subsequently, the owner of the property known as the "Riverside Steam Laundry"; that the defendant did not on that day, as agent for Mrs. De Borra, sell said property, and take in payment therefor the two notes in controversy; and that Mrs. De Borra never was the owner of said notes, or entitled to the possession thereof. It is claimed for appellant that this finding was not justified by the evidence; and it is said that all the evidence, admissions and stipulations show that defendant bought the said property for Mrs. De Borra with her money, and that as her agent he sold the same, taking in part payment therefor the said two notes, and that she was the owner and entitled to the possession thereof. It is true, Mrs. De Borra testified that the defendant bought the said property with her money, but on cross-examination she said she could not tell whose money bought the property; that she supposed it was her money that paid for it. And, as tending to contradict her statement that she owned the said property and notes, two witnesses testified that when she was asked to sign as surety her husband's notes to the plaintiff she said he had security, for he had the laundry property and other securities; that he ought to be able to pay his debts and to give security. "There is the laundry property. He must have security." Looking, then, at all the evidence, in view of the well-settled rules of this court as to conflicting evidence, we think it cannot be said that this second finding was not justified.

3. The objections to the other findings rest upon the same grounds as those above considered, and, for the reasons already stated, cannot be sustained.

4. Under the head of "Errors in Law" appellant claims that, "if the findings were all warranted by the evidence in the case, still the conclusion of law 'that said plaintiff is entitled to the possession of said notes set out in paragraph 3 of said plaintiff's complaint' is wholly unwarranted by any facts found, and is not sustained by the pleadings." Counsel

fail to quote the whole of the conclusion. They should have added, "And is entitled to have the same remain in the custody of the defendant, the Orange Growers' Bank." We see no error in this conclusion. If, as alleged and found, the notes were pledged to the plaintiff, and were in the custody of the said bank as pledge-holder for him, then, clearly, he was entitled to their possession, and to have them remain in the custody of the pledge-holder. It is also claimed that the judgment was against law, because it did not in any way dispose of the Orange Growers' Bank. But, as the court found that appellant was not the owner of the said notes, nor entitled to the possession of them, she was not "aggrieved" because the judgment was not more full and specific as to the said bank, and therefore cannot be heard to make this complaint of it. The cases cited by appellant in support of this claim are not in point. They were both cases where the appellant was aggrieved by the failure of the trial court to dispose of the whole case by its judgment.

It is further claimed that the court erred in admitting in evidence, over the objection of appellant, Plaintiff's Exhibit B and the two notes in controversy. The exhibit described the notes which it directed the Riverside National Bank to hold for the plaintiff as "notes on Riverside Steam Laundry," and it was proved that the parties who signed them constituted the Steam Laundry Company at that time. It was also proved that the notes objected to were two of the notes referred to. This being so, we fail to see any valid ground for the objections to the admission of the said exhibit and notes in evidence. It follows that the judgment and order appealed from should be affirmed, and we so advise.

We concur: Haynes, C.; Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.